James R. Rogers/SBN 99102
jrogers@jrrlaw.net
LAW OFFICES OF JAMES R. ROGERS
125 S. Highway 101, Suite 101
Solana Beach, CA  92075
Telephone:  858-792-9900
Facsimile:  858-792-9509

Attorneys for Defendant/Counter-Claimant
LEXINGTON INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEXAS FARMERS INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY and DOES 1 through 10,<br><br>  Defendants.<br>_____<br><br>LEXINGTON INSURANCE COMPANY,<br><br>  Counter-claimant,<br><br>v.<br><br>TEXAS FARMERS INSURANCE COMPANY,<br><br>  Counter-defendant.<br>_____ | Case No. CV06-08220 ODW-AJW<br>[Hon. Otis D. Wright II]<br><br>DEFENDANT LEXINGTON INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TEXAS FARMERS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT<br><br>ACCOMPANYING DOCUMENTS: RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS<br><br>Hearing Date:   March 17, 2008<br>Time:           1:30 p.m.<br>Courtroom:      11<br><br>Pre-Trial Conf: April 7, 2008<br>Trial:          May 6, 2008 |

# I
# **SUMMARY OF OPPOSITION**

In its moving papers, TEXAS FARMERS INSURANCE COMPANY ("TFI") does not challenge LEXINGTON's coverage position.[1] Instead, it asserts that it is irrelevant whether or not TFI's primary policy covered the Kupukaa claim/settlement because LEXINGTON INSURANCE COMPANY ("LEXINGTON") is a reinsurer and is bound by the settlement. TFI's argument is nonsensical and flat out wrong.

The issue before this court is simple; which TFI policy was triggered by the Kupukaa claim/settlement that was settled for $3.3 million. If it was not the policy TFI chose to place it in, namely its third policy with $1 million limits, then Ordway/LEXINGTON had no obligation to pay and LEXINGTON wins. On the other hand, if the Kupukaa claim/settlement triggered TFI's third policy, then Ordway/LEXINGTON would be obligated to pay and TFI wins.

# II
# **NO COVERAGE – NO REINSURANCE**

While LEXINGTON disputes whether its certificate of reinsurance contains a "follow the fortunes" or "follow the settlements" provision, it really does not matter one way or the other. It is well established that under no circumstance is a reinsurer obligated to indemnify payments beyond the scope of the underlying or original policy.

As clearly stated in the case cited by TFI, *North River Insurance Company v. CIGNA Reinsurance Company* 52 F.3d 1194, 1198-1201 (3rd. Circuit 1995), "the reinsurer retains the right to question whether the reinsured's liability stems from

---

[1] Cross-motions for Summary Judgment are pending before this court. Therefore, LEXINGTON respectfully incorporates its moving papers (including its proposed Statement of Decision, Order & Judgment) and will only respond to points raised by TFI that may not have been addressed in LEXINGTON's moving papers. Exhibits that have already been filed with the court will be referred to as either a LEXINGTON Exhibit or a TFI Exhibit. LEXINGTON will not be submitting any additional exhibits.

an unreinsured loss. A loss would be unreinsured if it was not contemplated by the original insurance policy or if it was expressly excluded by terms of the certificate of reinsurance."

LEXINGTON appreciates and has no objection to TFI's request that this court take judicial notice of the case entitled *The City of Renton v. Lexington Insurance Company* (USA) 2007 U.S. Dist. Lexis 69959, wherein the court held:

> Even under the "follow the settlements" or "follow the terms and conditions of the policy" clauses here, the reinsurer is liable only for a loss of "the kind reinsured." [Citation omitted.] The reinsurer is not bound to pay where the primary insurer paid on a claim that was completely outside the coverage of the policy, and not in good faith.[2] [Citation omitted.] This distinction between insured and uninsured risk is particularly important where, as here, the reinsurance is facultative, because the reinsurer accepts only specific risk, as set forth in the underlying policy. [Citation omitted.] The question, then, is whether the error in design of the bridge is a risk covered by the WCIA policy. [Footnote added.]
> [Exhibit TT to **TFI's** motion (*City of Renton* case) at page 275.]

---

[2] The bad faith referred to by the court was an additional basis to find that LEXINGTON had no duty to reinsure that was inextricably intertwined with the lack of coverage. After holding that "the claim for damage to the bridge was outside the scope of the WCIA policy because the loss was due to an excluded 'inherent vice' . . . [, the court held that it] further finds that the claim was not paid in good faith because WCIA paid the claim late in this action, after discovery had closed, and without further notice to or consultation with defendants, knowing that defendants had already declined to cover the claim under the 'inherent vice' exclusion. ***The Kupukaa claim settled under similar circumstances***.

LEXINGTON respectfully requests the court take judicial notice of the fact that LEXINGTON prevailed in the *City of Renton* case. It is also worth noting that the *City of Renton* court held that LEXINGTON had no duty to reinsure due to policy **_exclusions_**. The facts before this court show the claim did not fall within the **_risk insured_**, which provides an even stronger basis to hold LEXINGTON had no duty to reinsure and is entitled to judgment as a matter of law.

The coverage issues involved in the *City of Renton* case arose out of similar policy exclusions contained in two different primary policies and **two different certificates of facultative reinsurance** issued by Lexington (UK) and LEXINGTON (USA). Both certificates followed "the terms and conditions of the [ceding] policy"[3]; however, one also included a "follow the settlements" clause[4] (Lexington UK). [TFI's Exhibit TT at page 275.]

In any event, the *City of Renton* court ultimately held that LEXINGTON was "*entitled to judgment as a matter of law, finding that the loss was not within the scope of the . . . [primary] policy, and therefore defendants have no obligation as reinsurers to follow the settlement and reimburse WCIA for the payment to the city.*"  [Italics added.] [TFI's Exhibit TT at page 277.]

## III

## ORDWAY'S EXCESS OBLIGATION

TFI argues that Ordway's excess obligation has nothing to do with TFI's policy. In fact, TFI argues it is irrelevant whether the Kupukaa claim/settlement is covered by the subject TFI policy. TFI is wrong.

The Ordway excess policy clearly states that it is only obligated "to indemnify the insurance against 'ultimate net loss' **_in excess_** of the 'underlying

---

[3]  This certificate, issued by Lexington (USA) is the same one that is before this court. **_At no point did the City of Renton court hold such language invokes the "follow the settlements" doctrine._**

[4]  The certificate before this court **_does NOT_** contain a "follow the settlements" clause.

amounts'".[5]  Additionally, it is stated within the insuring agreements section that "[l]iability shall attach to the company (1) only after the issuers of the underlying coverage has paid or has been held liable to pay the full amount of said underlying limit . . . ."[6]  As stated in the conditions section, Ordway is only obligated to indemnify Kaiser "for 'ultimate net loss' in excess of the 'underlying amounts', whether the named insured is self insured or obtains insurance for such 'underlying amounts'."[7]  Clearly, Kaiser obtained insurance through TFI to satisfy its policy conditions/obligations to maintain the "underlying amounts".

It should go without saying that an "**ultimate net loss**" cannot be triggered by payments that are *not* part of or contractually connected to the "**underlying amounts**", i.e., TFI's $1 million policy.

Again, the issue before this court is which TFI policy was on risk at the time of the settlement.  Only after this is done can it be determined whether "*the underlying coverage has paid or has been held liable to pay the full amount of said underlying limit* . . . ."  [Emphasis added.]

Moreover, if one of TFI's $5 million policies was triggered by the Kupukaa claim/settlement, such policy is obligated to "pay" or fund the entire Kupukaa settlement.  As Ordway's policy states, "[i]f other insurance is available to an insured in excess of the 'underlying amount(s)' . . . to which this insurance is subject, covering an 'occurrence' also covered hereunder, the insurance hereunder shall be excess of and not contribute with such other insurance."  Therefore, at a minimum, TFI's $5 million policy qualifies as "other insurance" that would be excess of the "underlying amounts" stated within the Ordway policy and Ordway had no duty to pay or indemnify.

---

[5]  LEXINGTON's Exhibit 5 at page 143.
[6]  *Id.*
[7]  *Id.* at 155.

This brings us back to the point raised by LEXINGTON in its cross-motion for summary judgment; the issue before this court is which TFI policy was triggered by the Kupukaa claim/settlement. If it triggered one of TFI's $5 million policies, TFI is obligated to fund the entire settlement. If it triggered TFI's third policy, it triggered Ordway's obligation to insure and LEXINGTON's obligation to reinsure.

## IV
## ONE CLAIM - INTERRELATED WRONGFUL ACTS

TFI seems insistent on trying to make a distinction between the "kidney-related" claim and the "eye-related" claim. The fact is they both arise out of Kaiser's treatment of Ms. Kupukaa's ***diabetes*** ("kidney-related" claim) and ***diabetic symptoms*** known as proliferative diabetic retinopathy ("eye-related" claim). These two "claims" were inextricably linked and settled as one claim.

In any event, TFI admits, and even alleges, that the claim it settled involved a single claim (one claim limitation) involving interrelated wrongful acts (single policy limitation). In its first amended complaint TFI admits at page 6, paragraph 12, lines 8-10 that the "***Kupukaa claim alleges interrelated wrongful acts and/or occurrences*** . . . ." [Emphasis added.] It further alleges at page 6, paragraph 13, lines 15-20 that the Kupukaa claim is subject to its per claim, i.e., single claim, limits of $1 million. [*See also* LEXINGTON's Exhibit 13, pages 261-263 whereupon TFI's representatives admitted that the Kupukaa claim, which included both the "eye-elated" and "kidney-related" claims as one single claim of interrelated wrongful acts.]

Additionally, TFI's defense counsel's recommendation to combine these interrelated wrongful acts was based, at least in part, on the fact there was a risk that "collateral estoppel" would apply if they were not combined. [See page 7 of TFI's moving papers, lines 23-28 and Fact No. 22 of TFI's uncontroverted statement of facts.] It was further noted by TFI's defense counsel that including the

"kidney-related" claim "would increase the potential verdict value . . ." and that "[t]he size of the award and settlement value of the claim will have to be re-evaluated and will increase . . . ." [*See* page 8 of TFI's memorandum of points and authorities, lines 20-21 and TFI's statement of uncontroverted facts, Fact No. 22.]

## V

## THE CONCEPT OF GOOD FAITH

It is not LEXINGTON's position that the Kupukaa settlement, in and of itself, was unreasonable considering Kaiser's liability and damage exposure. However, to the extent that either TFI or Ordway placed the Kupukaa claim/settlement within TFI's $1 million policy, the settlement was not in good faith. In other words, for purposes of policy coverage the settlement was not in good faith.

As noted by TFI, LEXINGTON communicated its coverage position regarding the Kupukaa claim prior to TFI, Kaiser and/or Ordway agreeing to the settlement. LEXINGTON did not participate in and did not consent to the Kupukaa settlement.[8] *After* Kaiser, TFI and Ordway settled the Kupukaa claim, LEXINGTON agreed to the subject Funding Agreement. Thus, to the extent TFI, Kaiser or Ordway agreed to place the settlement within policies that did not cover the claim, LEXINGTON respectfully submits this act, assertion or agreement was in bad faith and LEXINGTON is not bound by it.

## VI

## TFI'S SUMMARY OF ITS DEFENSE IS MISLEADING

TFI asserts at page 9 that its eye expert performed poorly and thereby implying its defense counsel's valuation of the case increased significantly (*from 1 to 2 million to 5 to 7 million*). This assertion is not supported by the facts. The

---

[8] *See* TFI's moving papers page 11, line 16, through page 13, line 13.

1  deposition of Kaiser's eye expert (standard of care) was taken on June 19, 2006[9]
2  and defense counsel's "full value" of the case ***remained the same for the next four***
3  ***(4) months*** (1 to 2 million).  ***In fact***, the "full value" estimation of TFI's defense
4  counsel first increased after the poor deposition performance of TFI's and Kaiser's
5  "kidney-related" expert.[10]

6        TFI also asserts that its defense counsel "advised that, while the chance of a
7  complete defense verdict on the kidney claim was high (70-75%) given the non-
8  compliance history of Ms. Kupukaa, ***the same was not true for the eye-related***
9  ***claim***."  [Emphasis added.]

10       This assertion is misleading.  Truth in fact, the "non-compliance" defense
11 was asserted in response to the "eye-related" claim and is what triggered Ms.
12 Kupukaa's "kidney-related" claim.  If the defense applied, it applied to both
13 claims.[11]  In fact, Kaiser's defense counsel estimated a 50/60% chance of success
14 against the "eye-related" claim was based on this defense.[12]

15       The facts inherent to the Kupukaa settlement lead to the inescapable legal
16 conclusion that TFI and Kaiser settled a single claim involving interrelated
17 wrongful acts that triggered one of TFI's $5 million policies during the calendar
18 year 2000.  TFI chose to raise the non-compliance defense that triggered the
19 "kidney-related" claim and thereafter attempted to piggy-back it into its third $1
20 million dollar policy.  The facts are clear; the valuation of the so called "eye-
21 related" claim was constantly valued at $1-2 million with a settlement value of
22 $400,000-600,000.  It was not until the addition of the "kidney-related" claim and

---

[9] The eye expert retained by Kaiser (on behalf of its employee, Dr. Miller) was Dr. Weingeist whose deposition was taken on June 19, 2006; Exhibit 16, pages 316-317 (TFI's defense counsel's July 06 report under heading "Kaiser's Experts").

[10] *See* LEXINGTON's Exhibits 16 at pages 304, 307, 309-311, 313-314, 318-319, 323-324 & 327; Exhibit 18 at pages 333 & 337; and Exhibit 19 at pages 339 & 342; see also LEXINGTON's Memo in Support of its Motion for Summary Judgment and pages 12 thru 15.

[11] *See* LEXINGTON's Exhibit 16, which is TFI's defense counsel's January 06 report, at page 307 under the heading CAUSATION.

[12] *Id.*  In TFI's defense counsel's report he states that "[w]e estimate the chance of a defense verdict as 50/60%, particularly given the issues surrounding causation."  [Exhibit 16, page 307.]

completion of TFI's "kidney-related" expert's deposition that the valuation of this single claim involving interrelated wrongful acts skyrocketed to $5-7 million with a settlement value of $1 to $1.5 million.

TFI knew it had a problem with this case going to trial due to the increased damage exposure presented by the "kidney-related" claim.  This is the inherently obvious fact as to why TFI settled the Kupukaa claim for $3.3 million.

## X
## CONCLUSION

For the reasons set forth in its moving and opposing papers, LEXINGTON respectfully requests the court grant it motion for Summary Judgment and deny TFI's motion for Summary Judgment.[13]

Dated:  February 11, 2008

Respectfully submitted,

LAW OFFICES OF JAMES R. ROGERS

*James R. Rogers*

By: _____
James R. Rogers, Esq.
Attorneys for Defendant/
Counter-Claimant
LEXINGTON INSURANCE COMPANY

---

[13] As stated in the *City of Renton* decision, "[b]y both [parties] moving for summary judgment, the parties are in agreement that the matter of insurance coverage is an issue of law for the Court."  TFI's Exhibit TT at page 271.